The STATE ex rel. AMERICAN BUSINESS MACHINES,
DIVISION OF ALCO STANDARD CORPORATION

v.

INDUSTRIAL COMMISSION OF OHIO et al.

[Cite as *State ex rel. Am. Business Machines v.
Indus. Comm.* (1992), 76 Ohio App.3d 244.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–723.

Decided March 12, 1992.

Thompson, Hine & Flory and Barry L. Lubow, for relator.

Lee I. Fisher, Attorney General, and Cordelia A. Glenn, for respondent Industrial Commission of Ohio.

---

WHITESIDE, Judge.

This original action in mandamus was, pursuant to Civ.R. 53 and Loc.R. 11 of this court, referred to a referee, who has rendered a report recommending that the requested writ of mandamus be denied. Relator, American Business Machines ("ABM"), has filed objections to the referee's report, contending that the referee misapplied the controlling law with respect to burden of proof and misapplied the controlling law in finding relator to be a succeeding employer to Eicon Systems, Inc. ("Eicon").

We have reviewed the stipulated evidence and the referee's report and conclude that the objections are well taken in part.

Relator seeks a writ of mandamus ordering respondent Industrial Commission to vacate an order of November 2, 1989, finding that relator, a self-insured employer, is the successor to a state fund employer and, as a result, requiring relator to buy out the state fund employer's risk liability. We adopt the findings of fact of the referee.

Relator, a division of Alco Standard Corporation ("Alco"), is in the business of selling and leasing photocopy machines and other office equipment. On October 17, 1988, relator entered into an agreement with Eicon and two of its owners. Through this agreement, substantially all of Eicon's assets were transferred except certain life insurance policies. The agreement also included a noncompetition covenant, under which Eicon and its owner agreed not to compete with relator for a period of three years. The self-insured status is maintained by Alco, ABM being only a division of Alco. By letter dated March 2, 1989, Alco notified the Ohio Bureau of Workers' Compensation that Eicon would be merged into Alco effective October 1, 1988, and become part of the self-insured program, and also asserted that the transaction between Alco and Eicon did not constitute either a merger or a purchase of stock. The bureau's law director issued a memorandum stating that Alco was a "succes-

sor corporation" to Eicon and, therefore, was required to comply with the buy-out provisions of Ohio Adm.Code 4121–9–03(M).

Alco requested a hearing, which was held before the commission on October 19, 1989, with only three commissioners, Mayfield, McAllister and Bell, attending the hearing. Two of those three commissioners voted that a resolution be prepared. However, on November 2, 1989, in addition to McAllister and Bell, the resolution was signed not by Mayfield but, instead, by Fugate (who had not attended the hearing), rejecting relator's contention and holding that "the finding by the BWC Law Department that the buyout of $139,470 is justified as defined in Ohio Administrative Rule 4121–7–02(B) and must be paid [in] conjunction with the application to include Eicon Systems, Inc." Thereafter, relator commenced this action seeking a writ of mandamus upon two grounds as indicated by the objections to the referee's report.

Here, there is a fundamental preliminary defect in the Industrial Commission's proceedings. Since there are five members of the Industrial Commission, it takes three members to make a determination. Here, only three members attended the hearing and heard the case. One of those three would have granted the relief sought by relator. Later, a fourth commissioner, who had not attended the hearing, signed the commission order and finding indicated above.

The referee, although noting a defect, reasoned that, since relator had not affirmatively shown what evidence was taken at the hearing and did not affirmatively show that Commissioner Fugate did not review whatever evidence might be available to him before casting his vote, the defect should be overlooked. We reject this finding of the referee because it is inconsistent with *State ex rel. Ormet Corp. v. Indus. Comm.* (1990), 54 Ohio St.3d 102, 561 N.E.2d 920, in which it was held that, under almost identical circumstances, there was a violation of due process, necessitating a writ to issue ordering the Industrial Commission to make a proper determination of the claim. The only distinction is that, in that case, only two commissioners heard the matter and then a third commissioner signed the order that the two had agreed upon; whereas, in this case, although three commissioners heard the matter, since one of the three who heard the matter would not sign the order, a fourth commissioner was obtained to sign the order agreed upon by the plurality two members.

There is only one other distinction between this case and *Ormet*. In that case, the Industrial Commission presented affirmative evidence that the commissioner who had not attended the hearing did review the claimant's claim file. The commission's contention that the commissioner's review of the claimant's claim file was sufficient to overcome his failure to consider any

evidence that might have been presented at the hearing was rejected by the Supreme Court, which stated at 107, 561 N.E.2d at 925, of the *per curiam* opinion:

" * * * The commission points to the presumption of regularity that attaches to commission proceedings. Within the context of the present discussion, however, we interpret 'regularity' to require that an absent commissioner consider the evidence derived from a hearing in a meaningful way. This presumption is destroyed where the decision-maker admits that he did not consider any evidence from the hearing. The commission's contention that no meaningful evidence was submitted at the hearing is equally unpersuasive since without a record of the proceedings, we cannot tell what transpired."

In the preceding paragraph, the Supreme Court set forth the basic rule to be followed in these circumstances:

" * * * The decision-maker must, in *some meaningful manner*, consider evidence obtained at hearing. In the case before us, it is undisputed that, (1) Smith did not attend the hearing, (2) no transcript was taken, (3) no summary or report of the hearing was prepared, and (4) no other hearing or meetings occurred between Smith and the other commissioners concerning claimant's application. It is thus undisputed that Smith did not *in any manner* consider any evidence presented at the hearing." (Emphasis *sic.*) *Id.*

There is no evidence that the fourth commissioner, Fugate, even reviewed the claim file, much less considered evidence obtained at the hearing. The commission's argument is almost identical to that rejected by the Supreme Court in *Ormet, supra,* which was followed by that court in *State, ex rel. First Natl. Supermarkets, Inc., v. Indus. Comm.* (1991), 61 Ohio St.3d 80, 572 N.E.2d 672, in affirming the decision of this court rendered May 8, 1990, Franklin App. No. 89AP–402, unreported, 1990 WL 59270.

Respondent Industrial Commission and the referee relied upon the decision of this court in *State ex rel. Matlack, Inc. v. Indus. Comm.* (June 25, 1991), Franklin App. No. 90AP–1316, unreported, 1991 WL 123983, in which we affirmed a decision of the common pleas court denying a writ of mandamus, even though a commissioner who had not attended the hearing signed the order as one of the three necessary concurring commissioners. However, in that case, we distinguished *Ormet* upon the basis that the transcript of the hearing was presented, and it indicated that no evidence was adduced at the hearing conducted by only two commission members. Furthermore, the commissioner in *Matlack* apparently reviewed the claim file.

In this case, the referee properly found that there is no evidence before us that the commissioner, Fugate, either reviewed the claim file or reviewed a

transcript of the hearing before the three commission members, one of whom refused to sign the order.

■ The referee, without stating it in this fashion, found to the effect that the burden was upon the relator to prove that the commissioner who did not attend the hearing neither reviewed the transcript of that hearing nor reviewed the claim file in order for a denial of due process to be present. This is contrary to the holding of the Supreme Court in *Ormet, supra,* since in that case there, likewise, was no evidence as to whether the third commissioner, who did not attend the hearing, did, in fact, review the transcript of that hearing. The Supreme Court in *Ormet* rejected the contention that the absence of such negative evidence did not preclude the issuance of a writ and, instead, affirmed the decision of this court granting a writ, stating, as set forth above, that, in the absence of "a record of the proceedings, we cannot tell what transpired." The same is true here.

■ We have no way of knowing whether evidence was adduced at the hearing before the three commissioners other than Fugate. We, likewise, have no way of knowing whether Fugate reviewed the transcript of that hearing or reviewed the claim file prior to signing the commission order. Under the rule of *Ormet,* it necessarily follows that, once the relator has demonstrated irregularity in the proceedings, the burden is upon the respondent Industrial Commission to go forward with the evidence to demonstrate that the commissioner who did not attend the hearing both reviewed the claimant's claim file and reviewed the transcript of the hearing heard by the other commissioners. First, this is a fundamental principle of due process, and, secondly, it is a matter peculiarly within the knowledge of respondent Industrial Commission and to which relator has no access, except by asking respondent Industrial Commission, or at least Commissioner Fugate. Accordingly, we must issue a writ of mandamus as was issued in *Ormet,* ordering respondent Industrial Commission to redetermine the issue based on all of the evidence before the commission, with all such evidence being considered by all of the commissioners who participate in the decision.

With respect to the basic underlying issue, it is premature for this court to consider whether there has been an abuse of discretion on the part of the respondent Industrial Commission. Rather, there has been no proper decision by respondent Industrial Commission as to whether relator is a successor corporation to Eicon, the order which is the subject of this action having the concurrence of only two commissioners who heard the matter and considered the evidence, with three being required. The stipulated evidence includes a document entitled, "Hearing Check List," which affirmatively indicates that Commissioner Fugate was not present at the hearing and that "two members

of Industrial Commission voted to prepare resolution denying SI privilege which will require three votes from total commission in order to officially deny self-insurance." This is confusing because at least one of the commission members who attended the hearing determined that Alco is not a successor to Eicon. The resolution which was finally signed referred to the hearing being conducted October 19, 1989, and stated in a whereas clause:

" * * * The three [*sic*] members of the commission present at the hearing asked that a resolution be prepared denying the recognition of Eicon Systems as a subsidiary of Alco Standard Corporation and if a majority of the commission signed the resolution, the deficit of $139,407 would have to be paid in order for the self-insured privilege to be granted."

The resolution also indicates that it was based upon the motion of Commissioner McAllister, seconded by Commissioner Bell, and also was concurred in by Commissioner Fugate, who did not attend the hearing.

Since there is no proper determination by respondent Industrial Commission, it is premature for this court to consider the underlying issues as to whether the respondent Industrial Commission would abuse its discretion if it were to find relator to be a successor in interest to Eicon. Accordingly, we sustain relator's first objection to the referee's report, but deny the second objection since it is premature.

For the foregoing reasons, we (1) sustain relator's first objection to the referee's report and overrule its second objection, and (2) we adopt the findings of fact of the referee. Accordingly, a writ of mandamus shall issue ordering respondent Industrial Commission to vacate its order of November 2, 1989, concurred in by only two commissioners who heard the claim, to conduct such further proceedings as may be necessary, and to redetermine the issue of whether relator is a successor in interest to Eicon Systems, Inc., in an order concurred in by at least three commissioners who considered all of the evidence adduced in the claim file and at any hearing conducted thereon.

*Writ granted.*

McCormac and Petree, JJ., concur.